UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

AMANDA BROWN,                          )
                                       )
            Plaintiff,                 )
                                       )
            v.                         )        No. 1:21-cv-02668-SEB-MJD
                                       )
COSTCO WHOLESALE CORPORATION,          )
                                       )
            Defendant.                 )


**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

On September 6, 2020, a plastic partition fell on Plaintiff Amanda Brown while she was checking out her purchases at a Costco Warehouse in Indianapolis, Indiana. She filed suit against Defendant Costco Wholesale Corporation in state court seeking damages to compensate her for the injuries she sustained. Costco removed the action to our court under 28 U.S.C. §§ 1441 and 1446, asserting diversity jurisdiction under 28 U.S.C. § 1332. Costco now moves for summary judgment, arguing that Ms. Brown cannot establish two of the requisite legal elements of a negligence action—breach of duty, and proximate cause between Costco's alleged negligence and her injury. Because, as explained further below, genuine issues of fact remain as to both of these elements, summary judgment is unavailable to Costco.

## I.      STANDARD OF REVIEW

Parties to a civil dispute may seek a summary judgment as to their claims, which is a way of resolving the case short of trial, and "[t]he court shall grant summary judgment if

1

the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247−48 (1986). "Material facts" are those that "might affect the outcome of the suit," and a dispute about a material fact is "genuine" when "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Johnson v. Manitowoc Cnty.*, 635 F.3d 331, 334 (7th Cir. 2011) ("A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party.").

When deciding whether a genuine dispute of material facts exists, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.* at 255; *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572 (7th Cir. 2021). However, the non-moving party "may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (2007). We consider only the materials cited by the parties, Fed. R. Civ. P. 56(c)(3), and are not required to "scour every inch of the record" for evidence that is potentially relevant, *Grant v. Tr. of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017) (quoting *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). We do not "judge the credibility of the witnesses, evaluate the weight of the evidence, or

determine the truth of the matter." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009). Our inquiry is limited to "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

Under our Local Rules, a nonmovant's brief "must include a section labeled 'Statement of Material Facts in Dispute' that identifies the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment." S.D. Ind. L.R. 56-1(b). "Such statements . . . must 'state facts, not the party's argument . . .'" *Hinterberger v. City of Indianapolis*, 2019 WL 1439159, at *2 (S.D. Ind. Mar. 30, 2019) (Barker, J.) (quoting S.D. Ind. L.R. 56-1(a) cmt.; S.D. Ind. L.R. 56-1(b) cmt.). "'[E]ach fact' asserted in a brief must be supported by a 'specif[ic]' citation to the record." *Id.* (quoting S.D. Ind. L.R. 56-1(e)). The court "has no duty to search or consider any part of the record not specifically cited" in this manner. *Id.* (citing S.D. Ind. L.R. 56-1(e)). The movant's undisputed facts are "admitted unless the non-movant 'specifically controverts' them in its factual statement, shows them to be unsupported, or demonstrates that reasonable inferences can be drawn in its favor." *Hinterberger v. City of Indianapolis*, 966 F.3d 523, 527 (7th Cir. 2020) (citing S.D. Ind. L. R. 56-1). We note in the ensuing discussion those instances in which these requirements were not fully satisfied.[1]

## II.   FACTUAL BACKGROUND

---

[1] As an initial observation, we note that Ms. Brown's attorney failed to use the correct label of "Statement of Material Facts in Dispute" in their response brief. *See* S.D. Ind. L.R. 56-1(b).

The following factual background is set forth pursuant to the legal principles detailed above. "The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to 'the party against whom the motion under consideration is made.'" *Gannon v. Menard, Inc.*, 377 F.Supp.3d 936, 938 (S.D. Ind. 2019) (quoting *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005)).

In March of 2020, the COVID-19 pandemic was spreading through the United States, prompting both the Governor of Indiana and the President of the United States to declare states of emergency. These states of emergency, along with other related governmental responses, impacted all kinds of businesses in a variety of ways. Relevant here, the Department of Labor's Operational Safety and Health Administration ("OSHA") published guidance for workplaces generally, and for the retail industry specifically, recommending that workplaces "[i]nstall physical barriers, such as clear plastic sneeze guards, where possible." Docket No. 39-5, p. 21. OSHA also recommended "steps to reduce the risk of exposure to the coronavirus for workers in the retail industry (e.g., supermarkets, and big box stores)," including the installation of plexiglass partitions at cash registers. Docket No. 39-6, at 1. Meanwhile, the Indiana Governor's executive orders required businesses to "develop a plan to implement measures and institute safeguards to ensure a safe environment for their employees, customers, clients, and members." Docket No. 39-3, at 4. These plans were to address businesses' plans to comply with the Center for Disease Control's requirements of "maintaining six-foot social

4

distancing for both employees and members of the general public . . . and/or employing other separation measures such as . . . using barriers." *Id.*

In implementing these kinds of safety measures, Costco required each of its Warehouse locations to purchase and install plexiglass partitions for placement at all cash registers. The Costco Warehouse located on Michigan Road in Indianapolis, however, after encountering a shortage of plexiglass, purchased and installed plastic partitions that were functionally similar to plexiglass but made of thin plastic and measured approximately two to four feet in height, and four feet in width. They were affixed to the cash registers as well as to metal posts adjacent to each cash register by use of multiple Velcro Command strips. When the partitions were removed and cleaned, Costco employees would apply new Velcro Command strips to re-affix them to the cash registers and adjacent posts.

On September 6, 2020, Ms. Brown, accompanied by her ex-husband, was shopping at the Michigan Road Costco Warehouse in search of items relating to their son's upcoming departure to college. Ms. Brown testified that she "always go[es] to Costco," having regularly shopped there since early in the pandemic. Docket No. 39-8, at 8. However, this particular visit was the first time Ms. Brown had observed the plastic partitions installed by Costco at its cash register locations. Although she had observed similar partitions at other big-box stores such as Wal-Mart and Meijer, Ms. Brown said she was still "shocked" that Costco had installed them. *Id.* While waiting in line to check out, Ms. Brown noted that the plastic partitions did not keep the patrons from standing in close proximity to one another as they waited and conversed with one another, which she

5

regarded as "kind of weird." *Id.* at 9. She recalled wondering about how effective the partitions could possibly be at preventing the spread of COVID-19.

Costco cited in its motion for summary judgment as an undisputed fact that Ms. Brown had "noticed that the partition was hanging using Velcro." Docket No. 38, at 6. Ms. Brown disputes this alleged fact, citing to her own deposition testimony in which, in answer to a question about whether she remembered how the partitions were attached, she said, "I want to say Velcro," continuing with, "Yeah, it was like – I don't know. Honestly I can't – honestly, I know it was just hanging there. I don't know. I just know it was hanging there." Docket No. 51, at 10. Ms. Brown maintains that this testimony "does not indicate she knew the partition was hung by Velcro (i.e., Command Strips) *prior* to the incident at issue." *Id.* Construing these facts as well as all reasonable inferences in favor of Ms. Brown, as we must do at this juncture, Ms. Brown's observations re: the Velcro before the partition fell on her remains a disputed fact.

As Ms. Brown was preparing to finalize her purchases that day, she sorted her selections that she had placed on the checkout conveyor belt and separated them from her ex-husband's purchases. "There were so many people" in the vicinity of the checkout station, according to Ms. Brown, and in addition "[t]here was a lot of stuff on the belt." Docket No. 39-8, at 9. She testified that in the process of arranging her purchases she "reached" for a package of paper towels that was among the items to be purchased; Costco describes Ms. Brown's actions as having "pulled the large package of paper towels against the partition to such an extent that the partition flexed enough to be visible on the surveillance video." Docket No. 39-8, at 9; Docket No. 38, at 8.

6

Ms. Brown does not specifically deny this statement, nor does she offer a view as to whether it is possible to observe a flex in the plastic partition, as allegedly captured on the admittedly blurry surveillance footage. Ms. Brown does argue that Costco has adduced no evidence that would establish that she "should have known that the simple act of removing paper towels from a conveyor belt, a routine act performed while shopping, would have caused the partition to become detached and strike her." Docket No. 51, at 11. An argument in a brief, however, is not evidence, *Scherer v. Rockwell Int'l Corp.*, 975 F.2d 356, 361 (7th Cir. 1992), and a "mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lantz*, 321 F.3d 680, 683 (7th Cir. 2003) (citing *Edward E. Gillen Co. v. City of Lake Forest*, 3 F.3d 192, 196 (7th Cir. 1993)). Generally, such failure would render the movant's fact "admitted" by the non-movant. *See* S.D. Ind. L. R. 56-1(f). We may, however, excuse failure to comply strictly with this rule in the interest of justice. S.D. Ind. L. R. 56-1(l).

While, as we have previously noted, the Court has "no duty to search or consider any part of the record not specifically cited," there is a portion of Ms. Brown's deposition—which Costco itself has designated as evidence—that directly contradicts Costco's allegedly undisputed fact. *Hinterberger*, 2019 WL 1439159 at *2 (citing S.D. Ind. L.R. 56-1(e)). When asked during her deposition whether she had pulled the paper towels in such a way that they struck against the partition, Ms. Brown testified she did not pull the paper towels against the partition, nor did she observe at the time that her action cause the partition to fall down. Docket No, 39-8, at 9. She explained that she was merely reaching for the paper towels to pull them towards her when the partition fell. As Ms. Brown

explained: "It just happened so fast." *Id.* In light of this testimony, we will excuse Ms. Brown's attorney's failure to comply with our rule in the interest of justice and will not consider Costco's asserted fact "admitted" by Ms. Brown. Instead, we consider it a disputed fact as to whether Ms. Brown pulled the paper towels against the plastic partition, or merely reached for them.

Whatever caused this collapse, the undisputed evidence reveals that the partition did collapse and hit Ms. Brown's forehead, leaving a laceration. The store manager came immediately to assist Ms. Brown and attempted to call an ambulance, but Ms. Brown opted to have her shopping companion drive her to the hospital. Ultimately, she was treated for a concussion and the forehead laceration.

Prior to this incident involving Ms. Brown, the evidence before us reveals that the partitions occasionally had become dislodged and fallen straight down to the floor, seemingly "without provocation." Docket No. 38, at 9. However, Costco avers again, as an undisputed material fact: "There is no evidence that the temporary partitions ever fell and struck another customer before or after the incident involving [Ms. Brown]." *Id.* As support for this argument, Costco cites the deposition testimony of one Joe Paccione, the "front end manager" of the Michigan Road Costco Warehouse, who testified that he personally was unaware of any similar incidents occurring at the store. Docket No. 39-7, at 4.

However, following the filing of Costco's motion for summary judgment and designation of evidence, Ms. Brown's attorney conducted depositions of several entry-level employees at the Michigan Road Costco Warehouse, which yielded certain

additional disputed facts, to wit: (1) Costco employee Emily Mathieu's testimony that she had hit the partition with her shoulder while cleaning, which caused the partition to fall to the ground, (2) employee Luis Rosales's testimony that he had witnessed the partitions partially detach from the Velcro Command strips when customers accidentally hit the register with their shopping carts, though he had never witnessed an entire partition fall off, and (3) employee Connie Garcia's testimony that she had twice observed a partition fall to the floor after the checkout station had been hit by a customer's shopping cart.

Plaintiff also cites other Costco employees' testimony that specifically disputes Costco's allegation that "[t]here is no evidence that the temporary partitions ever fell and struck another customer before or after the accident involving [Ms. Brown]." Docket No. 51, at 7. According to Ms. Brown, Costco employee Ms. Evon Mayberry has testified that there was an occasion when, though Ms. Mayberry did not herself personally observe a partition fall on a customer at the checkout area, she saw the after-effects of a partition falling on the customer, which caused a cut on the customer's forehead and with which Costco manager "Karen" assisted. Docket No. 51-1, at 6–7. Ms. Mayberry also testified regarding another incident when she "saw the aftermath of [a fallen partition which struck a customer when the customer was] assisted" by unidentified Costco managers; this customer suffered a cut on her forehead.[2] *Id.* at 8. Costco employee Javier Reyes testified

---

[2] Ms. Brown again cites Ms. Mayberry's testimony, who stated that in both instances the partition had fallen after the customers had bumped into it while inserting their cards into the card readers. However, this assertion was not made based on Ms. Mayberry's personal knowledge; rather, it reflects statements of unidentified employees made to Ms. Mayberry. These out-of-court statements cannot be considered for the truth of the matters asserted, i.e., that the partitions would fall based on customers merely inserting their cards. "To be considered on summary

that he also had witnessed the immediate aftermath of a partition which fell and hit a customer; (he did not see the actual hit). Docket No. 51-7, at 3. According to Mr. Reyes, a Costco manager or supervisor whose name he could not recall responded to provide assistance.[3] Thus, whether partitions fell on other customers, and whether Costco was aware of such incidents, are also disputed issues of material facts.

## III.    DISCUSSION AND DECISION

"Because federal subject matter jurisdiction is based upon diversity of citizenship, we apply the substantive law of Indiana." *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022) (citing *Maurer v. Speedway, LLC*, 774 F.3d 1132, 1136 (7th Cir. 2014)). "For over a century, Indiana courts have set forth the elements of actionable negligence, and although the precise language has changed, the basic test has not." *Sturgis v. Silvers*, 296 F.Supp.3d 981, 987 (S.D. Ind. 2017) (collecting cases). The "essential elements" of a negligence action in Indiana are: "(1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and (3) an injury proximately caused by the breach of duty." *Yost v. Wabash Coll.*, 3 N.E.3d 509, 515 (Ind. 2014). The parties agree that Costco, a landowner, had a duty to Ms. Brown, a business invitee, to "protect her in a reasonable manner

---

judgment, evidence must be admissible at trial." *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016). "If the evidence is inadmissible hearsay, the courts may not consider it." *Id.* (citing *Carlisle v. Deere & Co.*, 576 F.3d 649, 655 (7th Cir. 2009)). We therefore have omitted these portions of inadmissible hearsay from our factual recitation.

[3] Ms. Brown cites Costco employee Jennifer Arila's testimony as well who said that she saw a partition fall and "hit a white woman around five five." Docket No. 51, at 7. The full excerpt of designated testimony by Ms. Arila reveals that she was actually describing Ms. Brown's physical appearance when Ms. Brown was hit by the partition. Docket No. 51-6, at 3. The parties have stipulated that Ms. Brown was struck by the partition.

against danger on its premises."[4] *Weaver*, 28 F.4th at 820; *see also Rogers v. Martin*, 63 N.E.3d 316, 320 (Ind. 2016) (a landowner owes an invitee a duty to "exercise reasonable care for the invitee's protection while the invitee is on the premises."). Accordingly, we are left to address the remaining two issues: (1) whether Costco breached its duty of reasonable care to Ms. Brown who was an invitee on its premises, and (2) whether Ms. Brown's own actions or Costco's alleged negligence constituted the proximate cause of her injury.

As a preliminary matter, we note that these issues both involve questions of fact for a jury to resolve; "not . . . [the court on] summary judgment." *Kroger Co. v. Plonski*, 930 N.E.2d 1, 9 (Ind. 2010) (citing *Mangold ex rel. Mangold v. Ind. Dep't of Nat. Res.*, 756 N.E.2d 970, 975 (Ind. 2001)). Only when facts are undisputed, i.e., where only one conclusion can be drawn from the facts, may the court resolve issues as a matter of law. *Id.* (citing *Mangold*, 756 N.E.2d at 975); *Ritchie v. Glidden Co.*, 242 F.3d 713, 725 (7th Cir. 2001) (citation omitted). Consequently, summary judgment is "rarely appropriate in negligence cases because they are particularly fact-sensitive and are governed by a standard of the objective reasonable person, which is best applied by a jury after hearing all the evidence." *Kramer v. Cath. Charities of Diocese of Fort Wayne-South Bend, Inc.*,

---

[4] The Indiana Supreme Court has "distinguishe[d] between 'invitee duty in cases involving injuries due to *conditions* of the land,' and those involving injuries 'due to *activities* on a landowner's premises unrelated to the premises' condition.'" *Sturgis*, 296 F.Supp.3d at 989 (quoting *Rogers v. Martin*, 63 N.E.3d 316, 323 (Ind. 2016)). From the beginning of this case, the parties have agreed that Ms. Brown's injury was due to a condition of the property, i.e., the plastic partition. We share this view. *See id.* at 991–992. As such, we omit any discussion of premises liability theories of proof based on dangerous activities.

32 N.E.3d 227, 231 (Ind. 2015) (citing *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004)). "Nonetheless, summary judgment is appropriate when the undisputed material evidence negates one element of a negligence claim." *Id.* (citing *Rhodes*, 805 N.E.2d at 385). We now examine the evidence adduced here by the parties to make this determination.

### A. BREACH OF DUTY

Decades ago, the Indiana Supreme Court adopted the following test from Section 343 of the Restatement (Second) of Torts, which provides that a landowner breaches its duty to an invitee when the landowner:

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care in protecting them against the danger.

*Burrell v. Meads*, 569 N.E.2d 637, 639 (Ind. 1991); *see also Weaver*, 28 F.4th at 821. "Each of the three elements must be present" in deciding whether there was a breach of duty. *Waldon v. Wal-Mart Stores, Inc.*, 943 F.3d 818, 822 (7th Cir. 2019) (citing *Rogers*, 63 N.E.3d at 322). Clearly, because genuine issues of material fact exist as to all three of these elements, whether Costco as the landowner breached its duty to Ms. Brown as an invitee is an issue that must be decided by a jury.

Costco expends much effort arguing that because the plastic partitions posed an obvious danger, it cannot be deemed liable for a breach of duty to Ms. Brown.

12

Obviousness of an allegedly dangerous condition, and the reasonableness of the landowner's and invitee's responsive actions, are issues that arise in the context of proximate cause rather than a breach of duty and must be proven by competent evidence. *See Roumbos v. Samuel G. Vazanellis & Thiros & Stracci, PC*, 95 N.E.3d 63, 66−67 (Ind. 2018) (explaining that the defendant failed to negate the proximate causation element because genuine issues of material fact remained as to whether the dangerous condition was, or should have been, obvious to the plaintiff).

In analyzing the breach of duty element, Costco argues that: (1) its knowledge or notice of the falling partitions is irrelevant, (2) Ms. Brown's own action of pulling the paper towels against the plastic partition caused it to fall, not any actions by Costco, and (3) the evidence on which Ms. Brown relies lacks sufficient detail to constitute required notice to Costco. Sidestepping Costco's third argument because it would require the Court to "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter," which we cannot do, our inquiry here is limited to determining "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Gonzalez*, 578 F.3d at 529; *Anderson*, 477 U.S. at 251–52.

### i.  SECTION 343(a) ANALYSIS

The first part under Section 343 "requires that the landowner have 'actual or constructive knowledge of a condition on the premises that involves an unreasonable risk of harm to invitees.'" *Pickett v. Target Corp.*, 2021 WL 3565503, at *2 (S.D. Ind. 2021)

(quoting *Pfenning v. Lineman*, 947 N.E.2d 392, 406 (Ind. 2011)). Contrary to Costco's argument that its knowledge or notice of the falling partitions is irrelevant to our breach of duty analysis, we begin by noting that Costco concedes that it had actual knowledge of the alleged dangerous condition, to wit, the loosely affixed partitions utilizing Velcro strips resulting in falling partitions "without provocation." Docket No. 38, at 9. Further, Costco's own employees have created genuine issues of material fact through their testimony as to whether Costco knew or should have known that the partitions (1) were falling based on minor amounts of force, such as a shopping cart bumping the checkout station, and (2) falling on customers who were checking out, causing them immediate facial lacerations. It will require a trial to resolve the issue of whether Costco had actual knowledge or should have realized that that these partitions posed an unreasonable risk of harm to its invitees.

### ii.   SECTION 343(b) ANALYSIS

Part (b) of Section 343 requires Ms. Brown to prove that Costco should have expected that invitees would not discover or realize the danger posed by the partitions, or that they would fail to protect themselves against it. *See Weaver*, 28 F.4th at 821. More specifically, whether Costco's customers would likely have discovered or realized the danger posed by the partitions affixed by Velcro—especially in a busy store checkout area—is also a question of fact requiring a jury decision. Even if it were determined that Costco could reasonably have expected its customers to take note of the fact that the partitions were affixed only by Velcro, other questions of fact remain as to whether

Costco could reasonably expect its invitees to note how precarious the partitions were. Costco's employees' testimony reporting that the partitions were repeatedly falling on unsuspecting customers will need to be evaluated by a jury.

In addition, the undisputed evidence before us does not permit Costco to rely on an expectation that its customers would  protect themselves against the possibility of falling partitions. *Gannon*, 377 F.Supp.3d at 944. Costco maintains that it could not be held to a standard of expecting an invitee to act so unreasonably as Ms. Brown did in "pulling a large package of paper towels off the conveyor belt and against the partition . . . with such force that the partition begins to flex." Docket No. 52, at 3. These facts are in dispute, but even if they were undisputed regarding the manner in which Ms. Brown pulled the package or reached for the package and whether that caused the partition to fall and whether Ms. Brown could and should have noticed a flex in the clear plastic partition occurring during the brief incident, Costco would have to prove that a customer engaged in moving items on a conveyor belt at the checkout station is an unreasonable or unexpected event. *See Gannon*, 377 F.Supp.3d at 944 ("There is nothing necessarily unreasonable about reaching into a shelf to grab an item not at the front of the shelf—generally speaking, shelves are designed for that sort of activity, and this shelf was several feet deep—and the evidence does not compel the inference that [the plaintiff] knew that any minor contact with another piece of flashing would cause it to fall off of the shelf."). Indeed, a reasonable factfinder could conclude that Costco should have expected that its customer, Ms. Brown, would utilize the conveyor belt in the way she did without causing the partition to fall.

### iii.   SECTION 343(c) ANALYSIS

Whether Costco failed to exercise reasonable care in protecting invitees against the danger, as required by part (c) of Section 343, no evidence has been adduced regarding any measures undertaken or instituted by Costco to warn customers of the risk of the partitions falling or to protect them from such an occurrence. Thus, if a jury were to decide that these incidents as described by Costco's employees actually occurred and that Costco was or should have been aware of them, the jury could also determine that Costco failed to protect its customers from such danger, and thereby breached its duty of care to its invitees. *Id.* at 944−45 (holding that even "[t]hough Menards undertook some efforts to prevent injuries from falling flashing, a reasonable jury could find these efforts insufficient.").

In sum, "[g]iven the many possible inferences that may be drawn as to the ultimate issue of the reasonableness of the parties' actions, these arguments must be resolved by a jury at trial." *Id.* at 944. Because genuine issues of fact remain as to all three Section 343 elements, Costco has failed in its attempt to overcome the breach of duty requirement. Costco might nonetheless be entitled to summary judgment if it can establish the absence of proximate causation between its alleged negligence and Ms. Brown's injury. We thus address next whether any genuine issues of material fact exist as to the element of causation.

### B.  PROXIMATE CAUSE AND LIABILITY

Costco argues that Ms. Brown cannot establish the element of proximate cause because it was not the manner in which Costco had affixed the partition, but rather the force Ms. Brown placed on the partition, that caused it to fall and injure her. Costco also makes the related argument that because the partition was a known or obvious danger to Ms. Brown, it cannot be held liable for her unreasonable actions in the face of such danger. Specifically, Costco argues that despite her knowledge and recognition of the way in which the partition was affixed, she "pulled a large package of paper towels against the partition with such obvious force that it caused the partition to swing almost parallel to the floor before it broke free and fell." Docket No. 38, at 16. Before we turn to a resolution of these arguments, we shall first delineate the legal principles that guide our analysis.

### i. PROXIMATE CAUSE GENERALLY

"A defendant's 'act or omission is said to be a proximate cause of an injury if the resulting injury was foreseen, or reasonably should have been foreseen, as the natural and probable consequence of the act or omission.'" *Houston v. Hyatt Regency Indianapolis*, 997 F.Supp.2d 914, 918 (S.D. Ind. 2014) (quoting *Funston v. Sch. Town of Munster*, 849 N.E.2d 595, 600 (Ind. 2006)). Factfinders undertaking this foreseeability inquiry are to be guided by the Indiana Supreme Court's "totality of the circumstances" test, which "requires an examination of 'all of the circumstances surrounding an event, including the nature, condition, and location of the land, as well as prior similar incidents.'" *Goodwin v.*

*Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384, 388−89, 392 (Ind. 2016) (quoting

*Delta Tau Delta v. Johnson*, 712 N.E.2d 968, 972−73 (Ind. 1999)).

## ii.  PROXIMATE CAUSE IN PREMISES LIABILITY CASES

In premises liability cases, the proximate cause inquiry is modified by the "principle

that a landowner is generally not liable for 'known or obvious dangers on the land.'"

*Weaver*, 28 F.4th at 821 (quoting *Roumbos*, 95 N.E.3d at 66).[5] The Indiana Supreme

Court adopted this principle from Section 343A of the Restatement, under which a

condition is "known" if the plaintiff is "both aware of the condition and appreciates its

danger," and a condition is "obvious . . . if both the condition and the risk are apparent to,

and would be recognized by, a reasonable person in the position of the visitor exercising

---

[5] In its most recent discussion of the known-or-obvious-danger principle in *Roumbos*, the Indiana Supreme Court places consideration of this principle squarely within the proximate cause inquiry. Comments to Restatement § 343A, however, describe this known-or-obvious-danger principle as one to be considered when a defendant raises an affirmative defense regarding the plaintiff's own fault in the negligent incident. Restatement § 343A, cmt. f. Any such confusion can be reconciled by the interrelation between the element of proximate cause and the affirmative defense of a plaintiff's comparative fault. Under the Indiana Comparative Fault Act, the legal requirements of proximate causation apply to both fault as the basis for liability, and the affirmative defense or contributory fault on behalf of the plaintiff. *See* Ind. Code § 34-51-2-3; *Control Tech., Inc. v. Johnson*, 762 N.E.2d 104, 109 (Ind. 2002). In other words, these inquiries are two sides of the same coin. *See Paragon Family Restaurant v. Bartolini*, 799 N.E.2d 1048, 1056 (Ind. 2003) (quoting *Control Tech.*, 762 N.E.2d at 109) ("when a jury finds that the conduct of a second actor was a superseding cause foreclosing the first actor as a proximate cause of the claimed injury, '[t]his is simply another way of saying, in comparative fault terms, that the original actor did not cause the harm and receives zero share of any liability.'"). Indeed, these two inquiries are properly conducted in conjunction with one another because if the plaintiff's "contributory fault is greater than the fault of all persons whose fault proximately contributed to the claimant's damages," then the plaintiff is barred entirely from recovery. I.C. § 34-51-2-6. Because the most recent decision from the Indiana Supreme Court on this principle refers to it in the context of proximate cause, and because the outcome is the same whether the discussion is labeled proximate cause or comparative fault, we are analyzing the known-or-obvious-danger principle only in the context of proximate cause.

ordinary perception, intelligence, and judgment." *Roumbos*, 95 N.E.2d at 67 (citing Restatement § 343A, cmt. b). However, "[t]here is an exception to the known-or-obvious-danger rule 'if a reasonable landowner would anticipate the harm despite the . . . danger's obviousness.'" *Smagala v. Embassy Suites Mgmt., LLC*, 2020 WL 208804, at *4 (S.D. Ind. Jan. 14, 2020) (quoting *Roumbos*, 95 N.E.3d at 66). This exception applies, in relevant part, to situations in which the possessor of the premises "'has reason to expect that the invitee's attention may be distracted' so that she will not discover or will forget the obvious danger." *Id.* (quoting Restatement § 343A cmt. f). In such cases, "the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection." *Weaver*, 28 F.4th at 821−22 (citation omitted). "This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm." *Id.*

### iii.  PROXIMATE CAUSE ANALYSIS

Here, the factual cause of Ms. Brown's injuries is undisputedly the partition's fall, landing on her forehead. Genuine issues of material fact remain, however, as to the proximate cause—i.e., the legal cause—of Ms. Brown's injuries. As such, summary judgment is unavailable to Costco on this issue, and, consequently, on Ms. Brown's claim as a whole.

We begin by noting Costco's assertion in its brief that Ms. Brown "pulled a large package of paper towels against the partition with such obvious force that it caused the

partition *to swing almost parallel to the floor* before it broke free and fell." Docket No. 38, at 16 (emphasis added). This argument is a novel claim, indeed, as it was not included at all in Costco's undisputed material facts. Regardless, material factual disputes remain on the issue of whether Ms. Brown exerted any force against the partition, and, if so, the degree such force exerted. Questions also remain as to whether Costco knew, or should have known, that its partitions were falling and injuring its customers, how frequently the partitions were falling, and how easily the partitions were becoming dislodged and falling. Indeed, under the "totality of the circumstances" test, the factfinder is required to examine "all of the circumstances surrounding an event, including the nature, condition, and location of the [condition], as well as prior similar incidents.'" *Delta Tau Delta*, 712 N.E.2d at 972−73. All these factual disputes will need to be resolved to determine whether Costco's or Ms. Brown's actions were the proximate cause of her injuries.

The known-or-obvious-danger principles asserted by Costco only adds to the mound of material factual disputes requiring resolution by a jury. Ms. Brown's testimony creates disputed facts as to whether she knew the partition was affixed by Velcro before the incident occurred, and there is no evidence that Ms. Brown had any reason to suspect the partitions were subject to falling with little or no provocation. Thus, drawing all reasonable inferences in her favor, we assume this danger was unknown to Ms. Brown. Likewise, the question of whether the dangerous condition and the risk were obvious to, and would be recognized by, a reasonable customer in Ms. Brown's position is a question for a jury to answer.

20

We are guided here by the Indiana Supreme Court's decision in *Roumbos*, where a plaintiff had tripped and fallen on wires lying on the floor in her husband's hospital room. 95 N.E.3d at 68. The Court found a material factual dispute remained as to whether the wires and the attendant risks would have been obvious to a reasonable person in plaintiff's position. *Id.* "Although [plaintiff's] husband had been a patient at the hospital a 'number of times,'" the Court concluded, "the record does not establish that his prior rooms were all identically configured—or, relevant here, that they all had wires lying on the floor that posed a tripping risk." *Id.* "For all we know," the Court explained, "the hospital bed and table obstructed the wires from view until [the plaintiff] was right on top of them," and "by then it was too late." *Id.* The Court opined that "[w]hether the wires generally, or the phone cord specifically, were obvious because they would have been apparent to a reasonable person under the circumstances is a disputed issue of material fact on this record that precludes summary judgment." *Id.* Here, a reasonable jury could find that, despite Ms. Brown's having observed similar partitions erected in other stores, a reasonable person in her position would not have anticipated the danger posed when they were affixed to the stanchions by Velcro, nor the apparent ease with which those partitions could fall.

Even if Costco had proven the danger was, or should have been, known or obvious to Ms. Brown, material factual disputes remain as to whether Costco had reason to expect that invitees' attentions might be distracted during the checkout process, "so that she will not discover or will forget the obvious danger." *Smagala*, 2020 WL 208804 at *4 (quoting Restatement § 343A cmt. f). Ms. Brown has testified that "[t]here were so many

people" in the vicinity of the checkout station, and "[t]here was a lot of stuff on the belt." Docket No. 39-8, at 9. From this evidence, a jury might reasonably conclude that the process of checking out one's purchases at a busy store is a sufficiently distracting environment, and Costco was thus required to warn its customers and/or to take reasonable steps to protect them from injury should the partitions collapse and strike them. Clearly, these material factual disputes regarding both prongs of the known-or-obvious-danger-rule render summary judgment unavailable.

## IV.   CONCLUSION

Having construed the facts and reasonable inferences in favor of Ms. Brown, as is required of the Court in ruling on summary judgment requests, we conclude that Costco has not satisfied its obligation to overcome either the breach of duty or proximate causation elements of Ms. Brown's premises liability claim. We therefore **DENY** Costco's Motion for Summary Judgment [Docket No. 37].

IT IS SO ORDERED.

Date:   1/20/2023

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

22

Distribution:

Ryan Daniel Etter
KEN NUNN LAW OFFICE
ryane@kennunn.com

Jessica N. Hamilton
KOPKA PINKUS DOLIN PC (Carmel)
jnhamilton@kopkalaw.com

Leslie B. Pollie
KOPKA PINKUS DOLIN PC (Carmel)
lbpollie@kopkalaw.com